IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**KENT L. UNDERBERG**, and
**CAROL B. HOSHAW**,

> Plaintiffs,

vs.                                                     No. **CIV 03-193 MCA/RLP**

**UNITED STATES OF AMERICA**,

> Defendant/Counterclaimant.


<u>**MEMORANDUM OPINION AND ORDER**</u>


**THIS MATTER** comes before the Court on the ***United States of America's Motion for Summary Judgment Against Plaintiffs*** [Doc. No. 13] filed on January 8, 2004, which was subsequently briefed by the parties pursuant to the ***Order Granting Unopposed Motion for Reconsideration*** [Doc. No. 19] filed on March 4, 2004.  Having reviewed the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the Government's motion for the reasons set forth below.  It follows that judgment shall be entered against each Plaintiff jointly and severally in the amount of $145,325.37, as of June 22, 2001, plus interest and statutory additions as provided by law.

**I.      BACKGROUND**

On February 7, 2003, Plaintiffs Kent L. Underberg and Carol B. Hoshaw filed a *Complaint for Tax Refund* relating to penalties assessed by the Government pursuant to Section 6672 of the Internal Revenue Code, 26 U.S.C. § 6672.  [Doc. No. 1.]   The

Government denied that Plaintiffs were entitled to any refund and filed a *Counterclaim* alleging that Plaintiffs are each indebted to the United States in the amount of $145,325.37, as of June 22, 2001, plus interest and statutory additions as provided by law.  [Doc. No. 2.]

An *Initial Pretrial Report* was filed on June 18, 2003, containing a single stipulation of fact and establishing a pretrial deadline of December 15, 2003, for the filing of dispositive motions.  [Doc. No. 11.]  Although no dispositive motions were accepted for filing as of that date (apparently due to non-compliance with page limits imposed by the Local Rules), the parties' filed a *Stipulation to Exceed the 50 Page Limit of L.R. 10.5 and to File a Motion for Summary Judgment Out of Time* on January 8, 2004.  [Doc. No. 15.]  On that same date, the *United States of America's Motion for Summary Judgment Against Plaintiffs* [Doc. No. 13] was accepted for filing and entered on the docket.  The Government's motion contains a certificate of service indicating that it was mailed to Plaintiffs' counsel on January 7, 2004, and the parties' stipulation indicates that it was filed with the approval of counsel for all parties on January 8, 2004.

Neither the Government's motion nor the parties' stipulation contain any request for an extension of the time for filing responses to motions provided in D.N.M. LR-Civ. 7.6(a), or a stay while settlement negotiations are pending.  By operation of D.N.M. LR-Civ. 7.6(a), Plaintiffs were afforded fourteen calendar days after service of the Government's motion to file their response.  They did not file a response within that time period, nor did they request an extension of time to do so.

Based on the record recited above, the Court initially entered an *Order Granting United States' Motion for Summary Judgment* [Doc. No. 16] and *Final Judgment* [Doc. No. 17] on February 27, 2004.   Thereafter, Plaintiffs filed an *Unopposed Motion for Reconsideration, to Vacate Summary Judgment Order and Final Judgment Order and for Permission to  File Response and Reply Briefs* [Doc. No. 18], which the Court granted on March 4, 2004.  [Doc. No. 19.]  As a result of that ruling, the earlier judgment against Plaintiffs was vacated, and the deadline for the filing of Plaintiffs' response to the Government's motion for summary judgment was extended until March 9, 2004, more than two months after the filing of that motion and four months after the close of discovery. Plaintiffs filed their response brief on the deadline of March 9, 2004, and the Court received notice of completion of briefing on April 15, 2004.  [Doc. No. 20, 22, 23.]

Based on the record as it exists following the completion of briefing on Defendants' motion, the undisputed facts and evidence in this case can now be summarized as follows. During the time period relevant to this action, Plaintiffs Kent L. Underberg and Carol B. Hoshaw were officers, directors, and shareholders of Mastermind Technologies, Inc. ("MTI").  Specifically, Plaintiff Underberg was MTI's President/Chief Executive Officer and owned 37 percent of the company's stock.  [Ex. 4, 6, 8, 19, 21 to Doc. No. 14; Doc. No. 6, at ¶ 2.]  Plaintiff Hoshaw was MTI's Secretary/Treasurer and owned the remaining 63% of the company's stock.  [Ex. 3, 5, 7, 19, 21 to Doc. No. 14; Doc. No. 6, at ¶ 3.]

Both Plaintiffs were involved to a significant degree in the management of MTI's financial affairs, and they each received compensation from the company.  [Ex. 7, 8, 10, 12,

13.]  In particular, they each were designated as "authorized signers" on the company's bank accounts with Norwest Bank.  [Ex. 14, 15, 18.]  Plaintiff Hoshaw signed numerous checks written on these accounts.  [Ex. 16.]  She also prepared and signed MTI's income tax returns.  [Ex. 9, 10, 11.]  Plaintiff Underberg negotiated contracts on behalf of MTI and had the authority to sign some contracts on the company's behalf.  [Ex. 4.]

As an employer, MTI was required to withhold its employees' share of federal social security taxes and income taxes from their wages pursuant to 26 U.S.C. §§ 3102(a) and 3402(a).  MTI also was required to hold such funds in trust pursuant to 26 U.S.C. § 7601(a), and eventually pay them over to the Government.  See generally Taylor v. IRS, 69 F.3d 411, 413 (10th Cir. 1995).

It is undisputed that MTI failed to pay over to the Government the necessary withholding taxes for the last two quarters of 1996 and all of 1997.  [Doc. No. 11, at 2; Ex. 1, 2 to Doc. No. 14.]  The Government has presented certified copies of its assessments against Plaintiffs for these unpaid taxes, and all the documents submitted with the Government's motion are supported by an affidavit of counsel.  [Ex. 1, 2; Doc. No. 13, Fisher Aff.]  Both Plaintiffs admit that they knew MTI was behind in its payment of withholding taxes owed to the Government and that funds in the company's accounts were being used to pay other creditors instead.  [Ex. 3, 4, 5, 6.]

In their defense, Plaintiffs claim that they were unable to pay the taxes at issue in this case because another company, Deutsche Financial Services (DFS), had taken control of MTI's payments to creditors beginning on June 1, 1996.  According to Plaintiffs, DFS

4

became involved in MTI's affairs as a result of a financing arrangement between DFS and MTI that MTI needed in order to administer a newly obtained contract with Sandia National Laboratories (SNL). Plaintiffs claim that DFS used this financing arrangement to leverage its efforts to gain control of MTI and that, eventually, DFS was successful in having MTI's contract with SNL turned over to another "preferred" company, Technology Integration Group ("TIG"). Plaintiffs allege that these efforts by DFS prevented them from paying the withholding taxes or selling MTI to another company under terms which would have ensured that these taxes were paid. According to Plaintiffs, MTI declared Chapter 11 bankruptcy on October 8, 1997. [Doc. No. 20.]

To support their defense that DFS effectively prevented them from paying the taxes, Plaintiffs rely primarily on their own affidavits, two documents relating to the proposed sale of MTI to other companies in December 1997, statements contained in the *Initial Pretrial Report*, and portions of their own responses to the Government's discovery requests. [Doc. No. 20, Hoshaw Aff., Underberg Aff., and exhibits thereto; Doc. No. 11; Ex. 3, 4, 5, 6, 20 to Doc. No. 14.] The record does not contain any finalized, executed contracts or other documents setting forth the respective powers and duties of DFS, MTI, SNL, or TIG under the financing arrangements to which Plaintiffs refer in their affidavits and other statements.

Further, the evidence of record concerning MTI's bank accounts and corporate reports does not indicate that DFS or its agents were authorized to sign or countersign MTI's checks, "freeze" its bank accounts, or otherwise direct its financial activities in a unilateral manner. MTI held accounts with a bank other than DFS, and Plaintiffs were able to obtain funding

from sources other than DFS to cover some of the company's expenses during the relevant time period.  [Ex. 14, 15, 16, 17, 18, 21 to Doc. No. 14; Hoshaw Aff. ¶¶ 20, 21; Underberg Aff. ¶¶ 12, 13.]

## II.   <u>ANALYSIS</u>

### A.   <u>Standard of Review</u>

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed. R. Civ. P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Id.</u>  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 671-72 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  In this case, the parties have submitted affidavits, exhibits, and answers to interrogatories and

requests for admissions.  They also refer to statements contained in the *Initial Pretrial Report*.  Not all of these materials are admissible or usable at trial in the manner presented here.

An admission under Fed. R. Civ. P. 36(b) is deemed conclusively established (unless the Court permits it to be withdrawn or amended) and "cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record."  In re Carney, 258 F.3d 415, 420 (5th Cir. 2001).  Admissions in a party's pleadings or in a pretrial order are similarly binding.  See Mo. Housing Development Comm. v. Brice, 919 F.2d 1306, 1314-15 (8th Cir. 1990) (admissions in pleadings); Davis v. A.G. Edwards & Sons, Inc., 823 F.2d 105, 107-08 (5th  Cir.1987) (per curiam) (same); Air-Exec, Inc. v. Two Jacks, Inc., 584 F.2d 942, 944 (10th Cir. 1978) (pretrial orders).

Although a party is not bound in the same manner by its answers to interrogatories, Fed. R. Civ. P. 33(c) generally permits such answers to be used as evidence by the adverse party.  When offered by the adverse party, answers to interrogatories and requests for admission usually are not considered hearsay insofar as they fall under the exception for admissions by a party opponent.  See Fed. R. Evid. 801(d)(2).  However, a party generally may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541-42 (10th Cir. 1995) (citing H.B. Zachry Co. v. O'Brien, 378 F.2d 423, 425-26 (10th Cir.1967)); Walsh v. McCain Foods Ltd., 81 F.3d 722, 726-27 (7th Cir. 1996) (hearsay in requests for admissions); Grace & Co.

v. City of Los Angeles, 278 F.2d 771, 776 (9th Cir. 1960) (hearsay in interrogatories); cf.
Kirk v. Raymark Indus., Inc., 61 F.3d 147, 167-68 (3d Cir. 1995) (concluding that self-
serving answers to interrogatories do not have sufficient guarantees of trustworthiness to fall
under the residual exception to the hearsay rule set forth in Fed. R. Evid. 803(24)).

Fed. R. Civ. P. 56(c) allows the use of affidavits to support or oppose a motion for
summary judgment, provided that they appear in the form specified by Fed. R. Civ. P. 56(e).
"To survive summary judgment, 'nonmovant's affidavits must be based upon personal
knowledge and set forth facts that would be admissible in evidence; conclusory and
self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422
(10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)). Thus,
"[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.
Gross, 53 F.3d at 1541; see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir.
1995) (applying this rule to inadmissible hearsay testimony in depositions). Further, "sworn
or certified copies of all papers or parts thereof referred to in an affidavit shall be attached
thereto or served therewith." Fed. R. Civ. P. 56(e); see Lozano v. Ashcroft, 258 F.3d 1160,
1166 (10th Cir. 2001) (refusing to consider declaration that was based on hearsay rather than
personal knowledge and did not attach copies of records referenced therein).

Apart from these limitations imposed by the Federal Rules of Evidence and the
Federal Rules of Civil Procedure, it is not the Court's role to weigh the evidence, assess the
credibility of witnesses, or make factual findings in ruling on a motion for summary
judgment. Rather, the Court assumes the evidence of the non-moving party to be true,

8

resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B.    Plaintiffs' Liability Under 26 U.S.C. § 6672

When an employer fails to withhold taxes from its employees' wages and pay them to the Government, Section 6672 of the Internal Revenue Code provides that the Government may collect a penalty equal to the total amount of the unpaid taxes from "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof."  26 U.S.C. § 6672.  See generally Slodov v. United States, 436 U.S. 238, 242-43 (1978).  When a penalty assessment under this provision is presented in the district court, the person against whom the penalty is assessed bears the burden of proving by a preponderance of the evidence that he or she is not liable.  See Fidelity Bank v. United States, 616 F.2d 1181, 1186 (10th Cir. 1980); Barnett v. IRS, 988 F.2d 1449, 1453 (5th Cir. 1993); Ruth v. United States, 823 F.2d 1091, 1093 (7th Cir. 1987) (collecting cases).

Generally, parties against whom such a penalty has been assessed may meet this burden by showing that (1) they are not "responsible persons" under this statute, or (2) they did not act "willfully" within the meaning of the statute.  See Bradshaw v. United States, 83 F.3d 1175, 1178, 1183 (10th Cir. 1995).  The Tenth Circuit also has recognized a narrow exception to the "willfulness" requirement in which liability under Section 6672 may be

avoided by showing that "(1) the taxpayer has made reasonable efforts to protect the trust funds, but (2) those efforts have been frustrated by circumstances outside the taxpayer's control." Finley v. United States, 123 F.3d 1342, 1348 (10th Cir. 1997) (en banc).

I first discuss the issue of whether Plaintiffs are responsible persons, and then turn to the issues of willfulness and reasonable cause. To determine whether Plaintiffs are each "responsible persons" with respect to the taxes at issue here, the Court considers the undisputed facts concerning whether they: "(1) held corporate office; (2) controlled financial affairs; (3) had authority to disburse corporate funds; (4) owned stock; and (5) had the ability to hire and fire employees." Taylor, 69 F.3d at 416; accord Bradshaw, 83 F.3d at 1178-79. "If an individual possesses sufficient indicia of responsibility, he is a 'responsible person' under § 6672 regardless whether he: (1) has the final say as to which creditors should be paid; or (2) has the specific job within the corporate structure to see that the taxes are paid over to the government." Taylor, 69 F.3d at 416 (citations omitted). "The crucial inquiry is whether the person had the 'effective power' to pay the taxes--that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Barnett, 988 F.2d at 1454.

In this case, the Court concludes as a matter of law that both Plaintiffs are "responsible persons" under Section 6672 based on the undisputed facts concerning their positions as officers, directors, and shareholders of MTI with authority to sign checks drawn on the company's accounts and/or enter into contracts on its behalf. [Ex's. to Doc. No. 14; Doc. No. 6, at ¶¶ 2, 3.] In reaching this conclusion, the Court rejects Plaintiffs' contention

10

that their responsibility for MTI's financial affairs was absolved when they entered into a financing arrangement with DFS in June 1996.

The Tenth Circuit rejected a similar contention in Bradshaw, 83 F.3d at 1180-81. The Bradshaw Court reasoned that so long as an individual was a "responsible person" at the time he or she voluntarily entered into a financing agreement with a bank, he or she could not evade liability under Section 6672 simply by agreeing to a provision which cedes to the bank the authority to exert financial control over the company which owes the taxes. "'To permit corporate officers to escape liability under section 6672 by entering into agreements which prefer other creditors to the government would defeat the entire purpose of the statute.'" Id. at 1181 (quoting Kalb v. United States, 505 F.2d 506, 510 (2d Cir.1974)); accord Bell v. United States, 355 F.3d 387, 395-96 (6th Cir. 2004).

Plaintiffs attempt to distinguish their case from Bradshaw and its progeny by claiming that their financing with DFS was negotiated under duress and that DFS exceeded the scope of the financing agreement by acting unilaterally for its own benefit. These claims are not sufficient to defeat summary judgment in this case because, among other things, Plaintiffs have not presented admissible evidence concerning the specifics of their dealings with DFS in this regard. As noted above and in the Government's reply brief [Doc. No. 22], "'conclusory and self-serving affidavits are not sufficient'" to defeat summary judgment, Murray, 45 F.3d at 1422 (quoting Hall, 935 F.2d at 1111), and "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross, 53 F.3d at 1541. Thus, Plaintiffs' vague and conclusory statements that DFS controlled or directed MTI's payments

11

to creditors beginning in June 1996 do not provide grounds for denying the Government's motion for summary judgment in this case.

DFS is not a party to this litigation, and thus any statements that Plaintiffs attribute to DFS or its agents do not qualify as admissions by a party opponent.   See Fed. R. Evid. 801(d)(2).  For the same reason, it is not appropriate or necessary for this Court to comment on what culpability, if any, DFS or other non-parties may have with respect to the unpaid taxes at issue here, except to note that "[l]iability under § 6672 extends to all responsible corporate officers or employees, not just to the single 'most' responsible individual." Taylor, 69 F.3d at 416 (citations omitted).

Plaintiffs also cannot rely on the general description of the nature of the case set forth at the beginning of the *Initial Pretrial Report* [Doc. No. 11, at 1-2] as an admission by a party opponent.  Those portions of the *Initial Pretrial Report* which may serve as admissions or stipulations of fact are set forth under a separate section entitled "Stipulations," and in this case the only stipulated fact set forth in the *Initial Pretrial Report* is that:  "Certain Form 941 federal employment taxes were not paid on behalf of Mastermind Technologies, Inc." [Doc. No. 11, at 2.]

To the extent that Plaintiffs' affidavits refer to actual, executed contracts or financing agreements involving DFS or SNL, Fed. R. Civ. P. 56(e) requires that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Fed. R. Civ. P. 56(e).  Plaintiffs did not comply with this requirement in this case, as there are no actual, executed contracts or financing agreements attached to

12

Plaintiffs' affidavits.  Consequently, the portions of their affidavits referring to these unattached papers do not warrant consideration in ruling on the Government's motion.  See Lozano, 258 F.3d at 1166.

It is a general principle of contract law that "'the intent of the parties to a written instrument must be determined primarily from the written terms.'"  Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1080 (10th Cir. 2001) (quoting KN Energy, Inc. v. Great Western Sugar Co., 698 P.2d 769, 776 (Colo. 1985)).  Under certain circumstances, extrinsic evidence may be considered in determining the meaning of a contract, see id. at 1081, provided that such evidence is sufficient to withstand a hearsay objection.  Out-of-court statements made in the course of contract negotiations may withstand such an objection if they constitute "verbal acts" that affect the legal rights of the parties, or if legal consequences flow from the fact that the words were said.  See id. at 1087.

In this case, the record does not contain any written instrument setting forth the terms of any actual, executed contracts or financing arrangements among MTI, DFS, SNL, or TIG. While Plaintiffs refer to various offers that were rejected or withdrawn in the course of negotiating such contracts or financial deals, these alleged offers do not fall under the "verbal acts" doctrine noted above because they do not constitute "'the offer and acceptance *which brought the contract into the being*.'"  Id. (quoting McCormick on Evidence § 249 (5th ed. 1999)).  For the most part, Plaintiff's affidavits describe the statements of DFS and other non-parties in the form of "illocutionary utterances" which "narrate, describe, or otherwise convey information, and are so judged by their truth value."  United States v. Montana, 199

13

F.3d 947, 950 (7th Cir. 1999).  Such illocutionary utterances do not fall under the "verbal acts" doctrine because their purpose is to establish the truth of the matter asserted, rather than simply to commit the speaker to a course of action.  See id.

Moreover, "the interpretation of a contract is [generally] a question of law," id. at 1080, and thus Plaintiffs may not defeat summary judgement in this case merely by submitting conclusory affidavits stating their own legal interpretations of what they thought their contracts with DFS, SNL, or TIG meant.  At a minimum, the Court would need to review the written instruments themselves in order to assess whether the legal interpretations proposed by Plaintiffs are correct.  As Plaintiffs bear the burden of proof on this issue, the failure to provide such written instruments is fatal to their claim in this instance.

Apart from these defects, there are some portions of Plaintiffs' affidavits and other statements that remain admissible.  The admissible portions of the affidavits and other evidence of record, however, do not contain specific facts which support a reasonable inference that DFS or some other person or entity exerted such control over MTI's payments to creditors as to render Plaintiffs' participation in these matters involuntary or coerced.  In this regard, the evidence of record does not show that DFS had the power to "freeze" MTI's accounts with Norwest Bank or otherwise prevent Plaintiffs from withdrawing funds from those accounts or obtaining funds from other sources.  On the contrary, the monthly bank statements submitted with the Government's motion show funds flowing through these accounts, and checks being written by Plaintiff Hoshaw, during the period when the company's withholding taxes went unpaid.  [Ex. 14, 15, 16, 17, 18 to Doc. No. 20.]  There

is also evidence, including Plaintiffs' own admissions, that MTI utilized funding sources other than DFS or SNL to cover some expenses, such as Plaintiffs' compensation, during this period.   [Ex. 5, 6 to Doc. No. 20; Hoshaw Aff. ¶¶ 20, 21; Underberg Aff. ¶¶ 12, 13.]

As noted in <u>Bradshaw</u>, 83 F.3d at 1180-81, the fact that DFS may have exerted greater bargaining strength than Plaintiffs in the financing negotiations, or that Plaintiffs were in danger of losing their contract with SNL if they did not accept the conditions offered by DFS, does not mean that Plaintiffs' actions thereafter became so involuntary or coerced that they can no longer be considered "responsible persons" under Section 6672 of the Internal Revenue Code.  If Plaintiffs were unable to obtain favorable financing from DFS or another bank, they could have backed out of the contract with SNL before any tax liability was incurred on that contract.  Or, as suggested in <u>Bradshaw</u>, they could have resigned their positions with MTI, refused to sign any checks, and shut down the business.  While the dilemma of choosing between losing one's job and violating the nation's tax laws may be a harsh one, corporate officers and directors who face this dilemma are not thereby absolved of responsibility for payment of withholding taxes.  <u>See</u> <u>Bradshaw</u>, 83 F.3d at 1181; <u>Bell</u>, 355 F.3d at 393-94.

In this context, such a dilemma also cannot be used to defeat a showing of willfulness. As noted by the Tenth Circuit in <u>Finley</u>, 123 F.3d at 1346, "'willful' conduct under Section 6672 is not the same as 'willful' conduct in the criminal context, and . . . certain facts are irrelevant to the determination of whether a responsible person willfully failed to pay withholding taxes."  In particular, liability under Section 6672 "does not depend on the

presence of a bad motive or the specific intent to defraud the government--elements associated with criminal liability."  Id. at 1344.  Rather, "willfulness" for purposes of imposing civil liability under Section 6672 requires only a "'voluntary, conscious and intentional decision to prefer other creditors over the Government.'"  Denbo v. United States, 988 F.2d 1029, 1033 (10th Cir. 1993) (quoting Burden v. United States, 486 F.2d 302, 304 (10th Cir. 1973)); accord Finley, 123 F.3d at 135; Bradshaw, 83 F.3d at 1183.

In Finley, 123 F.3d at 1345-48, the Tenth Circuit recognized certain "factual paradigms" that may "establish willfulness as a matter of law" in the absence of a showing of "reasonable cause."  These "factual paradigms" include:  (1) "[a] responsible person's failure to investigate the problem or correct mismanagement after receiving actual notice of a withholding tax delinquency"; (2) "[r]eliance upon the representation of someone in control of company finances that withholding taxes will be paid after learning that such taxes are delinquent . . . when it is known that the person making the statements is unreliable and has inadequately performed his financial responsibilities in the past"; and (3) "[t]he payment of other bills with knowledge that the business is in financial trouble, but failing to reasonably inquire whether money would be available to pay withholding taxes when they become due."  Id. at 1346.

More generally, the Tenth Circuit has concluded that, in the absence of "reasonable cause," "willfulness as a matter of law" is established when undisputed facts show that "(1) a responsible person, (2) had knowledge of a withholding tax delinquency, and (3) failed to personally fulfill his duty to ensure payment of the delinquent taxes with any available,

16

unencumbered funds prior to paying any other creditors." Id. at 1348.  The facts described in Bradshaw, 83 F.3d at 1183-84, present such a scenario, and the subsequent opinion in Finley, 123 F.3d at 1348, indicates that the Tenth Circuit would continue to apply this established paradigm "to identify willful conduct as a matter of law," subject to a narrow exception for "reasonable cause."

The undisputed facts of the present case fall under the paradigm of willfulness set forth in Bradshaw, 83 F.3d at 1183-84.  These facts support the conclusion that Plaintiffs were responsible persons who knew of MTI's tax delinquency yet failed to fulfill their personal duty to ensure payment with any available, unencumbered funds that flowed through MTI's accounts on which they had check-signing authority during the time period in question.  To the extent that their ability to pay the withholding taxes was hindered by conditions imposed as a result of financing arrangements with other creditors such as DFS, it was Plaintiffs' decision to engage DFS or other creditors in such financing arrangements in order to keep their contract with SNL.  Entering into such arrangements "was a knowing and intentional step which created the possibility that other creditors would be favored over the government." Id. at 1183.  After entering into such arrangements, Plaintiffs "decision to stay on, continue the business, and pay other creditors" in accordance with the alleged wishes of DFS constitutes willful conduct as a matter of law.  See id. at 1184.

The fact that Plaintiffs may have felt pressured by DFS or other creditors to disregard their obligation to pay the withholding taxes at issue in this case, or that Plaintiffs may have entered into an agreement to pay DFS or other creditors first, does not mean that the funds

17

in MTI's accounts were thereby encumbered or rendered unavailable for the purpose of paying the withholding taxes.   The conclusion that such funds were encumbered or unavailable requires a showing that they were legally obligated to be held in trust or used for another purpose that is superior to the United States' interest in the funds, as in the case of a contractor who is obligated by statute, regulation, or ordinance to "hold in trust monies used to fund construction projects in order to 'protect the owner and those whose labor and materials make the performance of a construction contract possible.'"  Bell, 355 F.3d at 394 (quoting Huizinga v. United States, 68 F.3d 139, 145 (6th Cir. 1995)).  Plaintiffs have identified no statute or similar legal obligation superior to the interest of the United States that encumbered the funds in MTI's accounts in this manner.

Under the above authorities, funds in a debtor's accounts are not deemed to be "encumbered" or "unavailable" simply because the debtor has voluntarily entered into a contract with a bank or finance company under which the debtor's use of loan proceeds is restricted.  See Bell, 355 F.3d at 394-98.  On the contrary, the debtor's decision to enter into such an agreement is itself evidence that the debtor has made a conscious choice to favor another creditor (i.e., the bank or finance company) over its trust-fund obligations to the Government.  See id.; Bradshaw, 83 F.3d at 1183-84.

Having concluded that Plaintiffs are "responsible persons" and that their conduct was "willful" for purposes of Section 6672 of the Internal Revenue Code based on undisputed facts, it follows that they are liable for the unpaid withholding taxes at issue in this case unless they can raise a genuine issue of material fact concerning the elements of the

18

"reasonable cause" exception articulated in Finley, 123 F.3d at 1348.  The Court is in a position to rule on the availability of the "reasonable cause" exception as a matter of law in this case for two reasons.  First, Plaintiffs were fully heard on the issue of willfulness, as evidenced by the lengthy extension they were given to respond to the Government's motion for summary judgment several months after the close of discovery.  Second, there is no legally sufficient evidentiary basis for a reasonable jury to find that Plaintiffs' conduct was not willful, even when the admissible evidence of record and reasonable inferences therefrom are construed in their favor.  See Howell v. United States, 164 F.3d 523, 526 (10th Cir. 1998) (citing Finley, 123 F.3d at 1349).

The Tenth Circuit has emphasized that the "reasonable cause" exception to liability under Section 6672 is a narrow one that must be distinguished from other, more lenient standards that rely on notions of "ordinary business care and prudence."  Finley, 123 F.3d at 1348.  For purposes of civil liability under Section 6672, "reasonable cause sufficient to excuse a responsible person's failure to pay withholding taxes should be limited to those circumstances where (1) the taxpayer has made reasonable efforts to protect the trust funds, but (2) those efforts have been frustrated by circumstances outside the taxpayer's control." Id.

The Tenth Circuit's narrow definition of "reasonable cause" accords with the reasoning expressed by the Sixth and Eleventh Circuits on this issue.  See Brewery, Inc. v. United States, 33 F.3d 589, 592 (6th Cir. 1994); Collins v. United States, 848 F.2d 740, 741-

42 (6th Cir. 1988); Thibodeau v. United States, 828 F.2d 1499, 1505 (11th Cir. 1987).

Under this reasoning,

> "Taxes withheld from the wages of an employee are held by the employer in trust for the government.  These trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer, including salaries.  It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern--the government cannot be made an unwilling partner in a floundering business."

Brewery, Inc., 33 F.3d at 593 (quoting Collins, 848 F.2d at 741-42) (citations omitted);

accord Finley, 123 F.3d at 1348.

Even under this narrow definition, "reasonable cause" might exist where a responsible person presents admissible evidence that he or she specifically ordered the taxes to be paid, but such orders were not followed because another creditor abruptly gained complete control of the trust funds through fraud, misrepresentation, or other unilateral action that the responsible person lacked the knowledge, sophistication, and resources to prevent.  In Finley, for example, there was evidence that the bank froze the company's accounts in such a way that the responsible persons could no longer make their own withdrawals, and when the responsible persons delivered additional funds to the bank along with a specific request that the bank officials apply those funds to the withholding tax balance, the bank took control of the additional funds but refused to honor the request to pay the taxes.  See id. at 1344. Another example is provided in Howell, 164 F.3d at 526-27, where there was evidence that the responsible person set aside funds to pay the withholding taxes, but insurance underwriters abruptly and unilaterally seized complete control of the company's accounts,

then disregarded the responsible person's past practice of using the withheld funds to pay the taxes.

Plaintiffs allude to such a scenario in this case, but they fail to present admissible evidence of specific facts which could support a reasonable inference that this scenario actually existed in their dealings with DFS or other creditors.  In particular, Plaintiffs have not presented admissible evidence that they ever set aside funds for paying the withholding taxes during the relevant time period or gave specific instructions to the bank or DFS that any funds should be directed toward paying these taxes.  On the contrary, the undisputed facts and evidence of record show that Plaintiffs had check-writing authority on MTI's accounts with Norwest Bank and that these accounts were not "frozen" by DFS or any other creditor in the same manner alleged in Finley and Howell.  It was not necessary for Plaintiffs to instruct or request that DFS or another creditor pay the company's withholding taxes because Plaintiffs themselves had check-signing authority over the funds flowing through MTI's accounts with Norwest Bank during the relevant period and did not rely exclusively on DFS or SNL as the sole source of company funds.

On these facts, it is not logical to infer that directing another person to pay the taxes constitutes a reasonable effort to protect the funds in question.  If another person disregarded such instructions out of loyalty to DFS or another creditor, Plaintiffs could have made the payments themselves because they retained the authority to withdraw funds from the company's accounts with Norwest Bank, as well as the authority to obtain funding from other sources.  See Bell, 355 F.3d at 398 n.8 (concluding that a "reasonable cause" exception

does not apply to a person who retained control of the loan proceeds once the bank advanced them, as well as the decision to enter into the contract with the bank in the first place).

The undisputed facts and evidence of record also present no legally sufficient basis on which to conclude that whatever efforts Plaintiffs made to protect the funds owed to the Government were frustrated by circumstances outside their control. As noted above, it is not logical to conclude that circumstances lie outside one's control when they are brought about by a financing agreement into which one has voluntarily entered. See Bell, 355 F.3d at 396-98; Bradshaw, 83 F.3d at 1183-84. It is equally illogical to conclude that circumstances lie outside one's control when one maintains and exercises the authority to make payments from the company's accounts to other creditors despite knowing that the withholding taxes have not been paid. See Thosteson v. United States, 331 F.3d 1294, 1301 (11th Cir. 2003).

I do not construe the "reasonable cause" exception as one where a person can disclaim liability merely by showing that one's actions were ordered by another shareholder, director, or creditor. See id. at 1300 (collecting cases). In urging this Court to adopt such a position, Plaintiffs make conclusory statements to the effect that they did not pay MTI's withholding taxes because DFS instructed them not to do so. It is not reasonable to infer that payment of the taxes was outside of Plaintiffs' control just because they feared losing their financing with DFS, or losing the contract with SNL, if they did not comply with DFS' instructions in this regard.

To show such a loss of control, Plaintiffs would have to do more than simply assert that they were instructed by another creditor not to pay the company's withholding taxes.

22

Instead, they would have to show that the other creditor actually prevented them from paying the taxes through unilateral action such as freezing accounts, eliminating Plaintiffs' check-writing authority, or placing statutory encumbrances on the funds in the company's accounts that are superior to the United States' interest in those funds and beyond the scope of what the company bargained for in its financing agreement with the creditor.  See, e.g., Finley, 123 F.3d at 1344; Howell, 164 F.3d at 526-27; Huizinga, 68 F.3d at 145.

Plaintiffs have not made such a showing here, despite being given ample opportunity to do so.  Accordingly, the Government is entitled to summary judgment.

## III.  **CONCLUSION**

For the foregoing reasons, the Government is entitled to summary judgment based on undisputed material facts.

**IT IS, THEREFORE, ORDERED** that the *United States of America's Motion for Summary Judgment Against Plaintiffs* [Doc. No. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that each Plaintiff is jointly and severally liable in the amount of $145,325.37, as of June 22, 2001, plus interest and statutory additions as provided by law.

23

**IT IS FURTHER ORDERED** that each party to this action shall bear its own costs, including any attorneys' fees.

**SO ORDERED** this 28th day of January, 2005, in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge